UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN WATSON, | Case No.  1:21-cv-01717-ADA-HBK |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANT DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[1] |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (Doc. Nos.  17, 18) |
| | FOURTEEN-DAY OBJECTION DEADLINE |

Kristin Watson ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument.  (Doc. Nos. 17-19).  For the reasons stated, the undersigned RECOMMENDS denying Plaintiff's motion for summary judgment, granting the Commissioner's cross-motion for summary judgment, and affirming the Commissioner's decision.

////

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(15) (E.D. Cal. 2022).

## I. JURISDICTION

Plaintiff protectively filed for supplemental security income on January 29, 2019, alleging an onset date of August 15, 2007. (AR 161-67). At the hearing, the alleged onset date of disability was amended to January 29, 2019. (AR 38). Benefits were denied initially (AR 93-98) and upon reconsideration (AR 102-07). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on September 17, 2020. (AR 32-65). Plaintiff testified at the hearing and was represented by counsel. (*Id.*). The ALJ denied benefits (AR 10-27) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 40 years old at the time of the hearing. (*See* AR 39). She graduated from high school. (AR 43). Plaintiff lives with her husband and two sons. (AR 40). She has work history as a childcare attendant. (AR 58). Plaintiff testified that she had a "psychotic break" in 2006, and since then she hears voices "maybe once a week." (AR 41, 43, 48). She reported that she has paranoia, mood swings, depression, panics and has social anxiety around people she doesn't know, cannot go to the grocery store alone, and several times a week needs help taking care of her kids when her anxiety is bad. (AR 41-42, 46-51). Plaintiff testified that she has trouble with concentration and multi-tasking, and her ability to take care of herself is compromised when she is depressed. (AR 52-53). She reported that she still experiences side-effects from her medications. (AR 54).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five. At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.

20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### V.     ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 29, 2019, the application date. (AR 15). At step two, the ALJ found that Plaintiff has the following severe impairments: schizoaffective disorder and mood disorder. (AR 15). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 16). The ALJ then found that Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform work that is uncomplicated enough that it could be learned within 30 days; the claimant cannot perform work involving hourly quotas or conveyer belts; the claimant can perform work involving no more than occasional simple workplace changes; the claimant can occasionally interact with coworkers and supervisors; and the claimant cannot interact with the public.

(AR 22). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 31). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner, housekeeping; routing clerk; and laundry aid. (AR 22-23). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 29, 2019, the date the application was filed. (AR 23).

### VI.     ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issue for this Court's review: whether the ALJ properly considered

Plaintiff's subjective complaints, and therefore incorporated all of Plaintiff's work-related limitations into the RFC consistent with the nature and intensity of Plaintiff's limitations. (Doc. No. 17 at 9-13).

### VII.   DISCUSSION

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing her RFC because he failed to offer clear and convincing reasons for rejecting her subjective complaints. (Doc. No. 17 at 9). An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.[2]  (AR 18).

**A. Medical Evidence**

First, the ALJ found that

> a review of [Plaintiff's] treatment records over time indicate that beginning in November 2019 and through approximately July 7, 2020, there were some significant mental status examinations and findings.  However, by July 21, 2020, less than two months prior to [Plaintiff's] hearing, and less than a year after the significant findings began in November 2019, [Plaintiff's] findings were much less severe, and did not reflect more than moderate impairment.

(AR 18).  Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(an ALJ may

---

[2] In addition to the arguments addressed below, Plaintiff contends that "the ALJ's assertion that Plaintiffs allegations are not supported because symptoms were 'only moderately problematic' is disingenuous." (Doc. No. 17 at 10-11(citing AR 21)).  In support of this argument, Plaintiff cites a portion of 20 C.F.R. Pt. 404, Subpt. P, App. 1 as follows: "The medical evidence may include descriptors regarding the diagnostic state of level of your disorder, such as 'mild' or 'moderate.' Clinicians may use these terms to characterize your medical condition.  However, these terms will not always be the same as the degree of your limitation in a paragraph B area of mental functioning." However, the regulation cited by Plaintiff pertains to the ALJ's consideration of "paragraph B" criteria at step three of the sequential analysis, a finding that is not challenged by Plaintiff in her opening brief.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing).  Plaintiff cites no legal authority to support a finding that the ALJ erred in discounting Plaintiff's symptom claims on this basis.  Thus, the Court finds no error.

7

not discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not supported by objective medical evidence). Moreover, a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). In support of this finding, the ALJ set out, in detail, medical evidence documenting the overall decrease in severity of Plaintiff's symptom claims across the relevant adjudicatory period, in contradiction to Plaintiff's claims of disabling mental limitations. (AR 19-21).

For example, the ALJ cited mental status examination findings in April 2019 that Plaintiff was in a stable mood; not experiencing hallucinations, paranoia or delusions; had no suicidal ideation; had congruent affect; had fair insight and judgment; and her memory and orientation were intact. (AR 19, 277). In July 2019, Plaintiff reported that she was experiencing mood swings and drowsiness, but denied hallucinations or suicidal/homicidal ideation, memory and orientation were intact, and "judgment, insight, and sleep were all fair." (AR 19, 280). A week later Plaintiff reported no suicidal thoughts or hallucinations, and her medical provider reduced her medication believing it was overstimulating Plaintiff based on her reports of increased anxiety. (AR 19-20, 282). In August 2019, as cited by the ALJ, Plaintiff reported she was stable and "ok," denied mood swings or hallucinations, and was noted on mental status examination to have fair insight and judgment, congruent affect, intact memory, and fair sleep. (AR 20, 283). In August 2019, Plaintiff was noted to be alert and oriented, and normal in terms of mood, affect, and behavior. (AR 20, 309). In November 2019, the ALJ acknowledged mental status examination results noting Plaintiff was paranoid, guarded, responding to internal stimuli, distracted, and had anxious mood and affect; however, the examination also noted that Plaintiff had normal speech with normal thought processes, had capacity for abstraction, associations were normal and goal-directed, her insight and judgment were intact, her fund of knowledge was intact, and she was fully alert and oriented. (AR 20, 428-29). In June 2020, Plaintiff endorsed issues with depression, mania, sleep, and memory; but she denied suicidal or homicidal ideation or

psychosis, had congruent but anxious effect, had normal rate of speech and thought process, had linear associations, and was alert and oriented. (AR 20-21, 374-75). In July 2020, as cited by the ALJ, Plaintiff still reported fatigue and anxiety, but also indicated her mood was stable, medication was helping her anxiety, she had improved energy, and she was not experiencing psychosis; and mental status examinations noted no evidence of medication side effects, normal speech and psychomotor activity, generally euthymic mood and affect, and intact judgment and insight. (AR 21, 364-65).

First, Plaintiff argues the ALJ's reasoning "fails to identify any basis for discounting Plaintiff's subjective complaints, or explain how the waxing and waning of symptoms or relative improvement is inconsistent with her alleged limitations." (Doc. No. 17 at 11). In support of this argument, Plaintiff cites mental status examination results in the record "throughout 2020," including findings of preoccupied thoughts, partial insight and judgment, problems with orientation, impaired memory, and sad, anxious, and irritable mood. (*Id*. (citing 368-69, 374-75, 380-81, 386-87, 391-92, 389-99). However, the ALJ explicitly recognized evidence in the record that could be considered more favorable to Plaintiff, including evidence from the precise treatment records cited by Plaintiff here, and nonetheless found the severity of her symptom claims were not consistent with the decrease in severity of mental status examinations by late July 2020. (*See* AR 18-21). "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Second, Plaintiff argues that "abnormalities" in mental status examinations "persisted throughout the relevant period, but are simply better documented as of 2019 because Plaintiff changed medical providers"; thus, "[t]he ALJ's mischaracterization of the severity of Plaintiff's symptoms based on the format of her earlier medical records is not a clear and convincing reason for finding her impairments 'less severe' prior to changing medical providers." (Doc. No. 17 at 12). This argument is not well-taken. Plaintiff does not cite, nor does the Court discern, legal authority to support the argument that an ALJ is required to compare the formatting of medical records in evaluating the consistency of a claimant's symptom claims with the objective medical

9

evidence. Rather, as detailed above, the ALJ considered the Plaintiff's subjective complaints and mental status examinations across the longitudinal record including evidence that could be considered more favorable to Plaintiff. (*Compare* Doc. No. 17 at 12, *with* AR 18-21).

Finally, Plaintiff is correct that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 795 F.3d at 1017. However, as discussed in detail above, the ALJ in this case gave a thorough summary of mental status examination findings chronologically through the relevant adjudicatory period and "the record is consistent with the ALJ's interpretation that Plaintiff experienced an exacerbation of symptoms in November 2019. Whether it was due to non-compliance or taking time to find the right treatment, Plaintiff stabilized and then, by the most recent treatment note, "was doing much better." (Doc. No. 18 at 13). Thus, based on the longitudinal record, it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with objective findings from the longitudinal record. *See Burch*, 400 F.3d at 679. This was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom claims.

**B. Failure to Comply with Treatment**

Second, and perhaps more notably, the ALJ found "there are compliance issues impeding [Plaintiff's] progress. For example, she often does not follow up when advised to, and moreover will decide on her own without professional input that it is time for her to change medications and dosages, or take psychiatric medications prescribed to a family member." (AR 18). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for rejection of Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-

*9 (March 16, 2016), *available at* 2016 WL 1119029.

Plaintiff argues that this was not a clear and convincing reason to discount her subjective symptoms because the ALJ "failed to acknowledge that Plaintiff's noncompliance with medication was the result of adverse side effects, which records document were severe and intolerable." (Doc. No. 17 at 10) (citing *Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2011)). This argument is unavailing for several reasons. First, as required under SSR 16-3p, the ALJ did consider Plaintiff's reported side effects, along with reports that she was not experiencing side effects. (AR 19-21 (citing 277, 280, 282, 291, 283, 364-66, 372, 426). Second, the ALJ supported this finding with additional evidence of non-compliance by Plaintiff, including observations by treating medical sources that Plaintiff had a history of taking her mother's medication and changing her dose of medication without input from a medical provider, refused to undergo a sleep study because she did not like the people at the clinic, binge watched television and stayed up late at night despite claiming sleep disturbances, and repeatedly resisted taking medication because she did not think it was working. (AR 277, 280 (also noting Plaintiff failed to make a follow up appointment), 283 ("VERY resistant to taking medications")). Personal preference is not a sufficient reason to not comply with treatment recommendations. *See, e.g.*, *Molina*, 674 F.3d at 1113-14 (affirming an ALJ's discounting a claimant's testimony based on a resistance to treatment, where there was no evidence that the resistance was based on her impairments rather than her personal preference).

Based on the foregoing, Plaintiff's documented failure to comply with treatment recommendations was a clear and convincing reason, supported by substantial evidence, to discount her symptom claims. *See Carmickle*, 533 F.3d at 1162-63. Thus, the Court concludes that the ALJ properly incorporated limitations into the RFC that the ALJ found credible and supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1217.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail

11

above, the ALJ properly considered Plaintiff's symptom claims and the assessed the RFC.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

        Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) be DENIED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 18) be GRANTED.
3. The district court AFFIRM the decision of the Commissioner of Social Security for the reasons set forth above.
4. The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:     January 9, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE